James D. Gilson (5472)
Marc L. Turman (11967)
CALLISTER NEBEKER & MCCULLOUGH
Zions Bank Building, Suite 900
10 East South Temple
Salt Lake City, Utah 84133
Telephone: (801) 530-7300
Facsimile: (801) 364-9127
Email: jgilson@cnmlaw.com
Email: mturman@cnmlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| HARVEY PULLEY, an individual; DIXIE PULLEY, an individual; and HDP PROPERTIES, LLC, a Utah limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST AMERICAN PROFESSIONAL REAL ESTATE SERVICES, INC., a California corporation; GREENFOLDERS, INC., a Utah corporation; MICHAEL S. KIRBY, an individual; TERRY E. FRANK; an individual; STEPHEN M. EHLERS, an individual; DANIEL C. IORG, an individual; TODD HOUGAARD, an individual; and DOES 1 through 10,<br><br>Defendants. | COMPLAINT<br><br>(JURY DEMANDED)<br><br>Case No. _____<br><br>Judge _____ |

Plaintiffs allege the following as their Complaint against defendants:

## PARTIES

1. Plaintiff Harvey Pulley is an individual who resides in West Jordan, Utah.

2. Plaintiff Dixie Pulley is an individual who resides in West Jordan, Utah.

3. Plaintiff HDP Properties, LLC ("HDP Properties") is a Utah limited liability company with its principal place of business in Salt Lake County, Utah.

4. Defendant Michael S. Kirby ("Kirby") is an individual who resides in Cottonwood Heights, Utah.

5. Defendant First American Professional Real Estate Services, Inc. ("First American") is a California corporation that does business in Utah.

6. Defendant GreenFolders, Inc. ("GreenFolders") is a dissolved Utah corporation that formerly did business in Utah.

7. Defendant Terry E. Frank ("Frank") is an individual who resides in Ogden, Utah.

8. Defendant Stephen M. Ehlers ("Ehlers") is an individual who resides in Holladay, Utah.

9. Defendant Daniel C. Iorg ("Iorg") is an individual who resides in Draper, Utah.

10. Defendant Todd Hougaard ("Hougaard") is an individual who resides in Salt Lake City, Utah.

11. Defendants Does 1 through 10 are individuals whose names and residence addresses are presently unknown but who participated in the wrongful acts alleged in this complaint. Plaintiffs will move to amend the complaint when further information is learned about these individuals.

## JURISDICTION AND VENUE

12. This court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because plaintiffs' third claim for relief arises under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and the rules and regulations promulgated thereunder, including Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5. This court has supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.

13. This court has personal jurisdiction over the defendants because the individual defendants are residents of the state of Utah, because GreenFolders was a Utah corporation, and because First American Professional Real Estate Services is a California corporation that does business in Utah.

14. Venue is proper in this court under 28 U.S.C. § 1391 because the defendants reside in this district, a substantial part of the events or omissions giving rise to the claims occurred in this district, and a substantial part of property that is the subject of the action is or has been situated in this district.

## FACTUAL BACKGROUND

15. Plaintiff Harvey Pulley is a 73-year-old retired machinist. He worked for over 50 years as a machinist manufacturing production parts for other companies. Plaintiff Dixie Pulley is 71 years old and is a retired nurse. They live in West Jordan, Utah. They will be collectively referred to herein as the "Pulleys."

16. Kirby was a close family friend of the Pulleys. He dated the Pulleys' daughter, Julie Taylor, from approximately June 2005 to July 2009. During this time he attended numerous family gatherings and also went on vacations with the Pulley family.

17. In the fall of 2005, Kirby began approaching the Pulleys with opportunities to provide hard money loans to various people that Kirby knew. The Pulleys made several hard money loans to some of these people, using Kirby as their agent.

18. In or around April 2008, Kirby became a director of Emageo, Inc. ("Emageo") a technology company that sells an office management software product called GreenFolders. Defendants Frank, Ehlers, and Iorg were also directors of Emageo, which later changed its name to GreenFolders, Inc. This Complaint will refer to Emageo hereafter as GreenFolders.

19. In July 2008, Kirby became the chief executive officer of GreenFolders.

20. In October 2008, Kirby approached the Pulleys about an opportunity to loan money to a Utah real estate developer named Doug Young. The Pulleys agreed to loan Young $680,000, using Kirby as their agent. None of the Pulleys' $680,000 went to Young. Instead, Kirby used the Pulleys' $680,000 in other businesses that Kirby was involved in, including GreenFolders. In November 2008, Kirby used $80,000 of the Pulleys' $680,000 to purchase GreenFolders stock in his name at $.40 per share.

21. In February 2009, Kirby approached Harvey about an investment opportunity with GreenFolders. After demonstrating to Harvey and two of Harvey's children how the GreenFolders software product works, Kirby told Harvey that GreenFolders wanted to raise at least $1 million in capital to grow the company, and that GreenFolders was offering to sell its stock in investment tranches of $250,000. Kirby further told Harvey:

      a.      that Kirby had several investors waiting for an opportunity to invest in GreenFolders, but that he wanted to give the Pulleys the first opportunity to buy as many shares as they want;

      b.      that if the Pulleys invested their funds in GreenFolders they could at least double their investment;

      c.      that the investment was a "no brainer" and that a large company like Microsoft would buy the GreenFolders software; and

      d.      that the Pulleys' funds would be safe and secure.

22. The Pulleys were not given any documents explaining the experience of GreenFolders' management personnel or the financial situation of GreenFolders. Nor were the Pulleys given any documents or information regarding the risks of the investment.

23. The Pulleys were not told that (i) GreenFolders would sell its stock to the Pulleys at $2.50 per share; (ii) no other investor had paid $2.50 per share for GreenFolders stock; or (iii) the most any other investor had paid for GreenFolders stock was only $.40 per share. Nor were the Pulleys told that in November 2008 Kirby had used $80,000 of the Pulleys' funds to purchase GreenFolders stock for himself at $.40 per share.

24. In reliance on the misrepresentations of material fact and the omissions to disclose material facts noted above, the Pulleys agreed to invest in GreenFolders.

25. On February 11, 2009, the Pulleys, through their wholly-owned company HDP Properties, gave Kirby a $250,000 check payable to GreenFolders. In return, the Pulleys received 100,000 shares of GreenFolders stock at $2.50 per share.

26. In July 2009, Kirby approached Harvey again about investing further with GreenFolders. Harvey told Kirby that the most the Pulleys could invest with GreenFolders was $125,000. Kirby told Harvey that would be great if the Pulleys could invest another $125,000.

27. On July 22, 2009, the Pulleys, through HDP Properties, gave Kirby a $125,000 check payable to GreenFolders. In return, the Pulleys received 50,000 shares of GreenFolders stock at $2.50 per share.

28. At no time before or after Plaintiffs invested in GreenFolders did Plaintiffs receive any written financial statements or annual reports from GreenFolders.

29. In July 2010 the Pulleys learned for the first time that in November 2008 Kirby had used $80,000 of the Plaintiffs' funds to purchase GreenFolders stock in his name.

30. Neither Kirby nor GreenFolders was licensed to sell securities in the state of Utah during the relevant time period.

31. The sale of the investment to the Plaintiffs was not registered with the U.S. Securities and Exchange Commission or the State of Utah or exempt from such registration.

<u>Successor Liability of First American</u>

32. In September 2011, GreenFolders entered into an asset purchase agreement with First American professional Real Estate Services, wherein First American purchased all of GreenFolders' assets.

33. Under the terms of the asset purchase agreement, Defendants Kirby, Iorg, and Hougaard—directors, officers, and shareholders of GreenFolders—secured for themselves employment agreements with First American.

34. Under the terms of the asset purchase agreement, First American was required to enter into a new lease agreement with ITS Holdings, LLC. Kirby is a manager and owner of ITS Holdings. First American is a part owner of ITS Holdings.

35. In the asset purchase agreement Kirby misrepresented that he does not directly or indirectly act as a lessor to GreenFolders. Kirby is a manager and owner of ITS Holdings, which leases space to GreenFolders.

36. The Plaintiffs did not receive any payment for their interest in GreenFolders as a result of the sale of GreenFolders' assets to First American.

37. The Plaintiffs did not receive any notice of dissenter's rights pursuant to Utah Code Annotated §§ 16-10a-1302, 16-10a-1320, and 16-10a-1322, arising from the sale of GreenFolders' assets to First American.

38. Shortly after the sale to First American, GreenFolders was dissolved by defendants as a Utah company and defendants continued the business of GreenFolders as a division or dba of First American.

39. Defendants Kirby, Iorg, and Hougaard—directors, officers, and shareholders of the predecessor company—continue to act as upper management of GreenFolders within First American.

40. The purchase of all of GreenFolders' assets by First American was a *de facto* consolidation or merger of GreenFolders.

41. The transaction between GreenFolders and First American is a mere continuation of GreenFolders.

42. The sale of GreenFolders' assets to First American was fraudulently entered into, designed to wrongfully terminate the Pulleys' minority interest in GreenFolders, and attempt to escape liability for GreenFolders' obligations, including its obligations and liabilities related to the Plaintiffs' purchase of GreenFolders' securities as alleged herein.

FIRST CLAIM FOR RELIEF
(Against All Defendants)
Fraud/Intentional Misrepresentation

43. Plaintiffs reallege and incorporate by reference the preceding paragraphs of this complaint.

44. Defendants in this case committed numerous acts of fraud.

45. Among the material misstatements are the following:

    a. that Kirby had several investors waiting for an opportunity to invest in GreenFolders, but that he wanted to give the Pulleys the first opportunity to buy as many shares as they want;

    b. that if the Pulleys invested their funds in GreenFolders they could at least double their investment;

    c. that the investment was a "no brainer" and that a large company like Microsoft would buy the GreenFolders software; and

    d. that the Pulleys' funds would be safe and secure.

46. Among the material omissions are the following:

    a. omitting to tell the Pulleys that no other investor had paid $2.50 per share for GreenFolders stock;

    b.    omitting to tell the Pulleys that the most any other investor had paid for GreenFolders stock was only $.40 per share;

    c.    omitting to tell the Pulleys that in November 2008 Kirby had used $80,000 of the Pulleys' funds to purchase GreenFolders stock for himself at $.40 per share.

    d.    omitting to give the Pulleys any documents explaining the experience of GreenFolders' management personnel;

    e.    omitting to give the Pulleys any documents explaining the financial situation of GreenFolders; and

    f.    omitting to give the Pulleys any documents or information regarding the risks of the investment.

47.    Defendants' statements and omissions were false or misleading and defendants knew at the time that they were false and misleading.

48.    Plaintiffs reasonably relied on these misstatements and omissions to their detriment, and to make their decision to invest in GreenFolders.

49.    As a result of defendants' misstatements and omissions, plaintiffs have been damaged in an amount to be proven at trial, but which is reasonably expected to exceed $375,000 plus interest.

50.    As a result of the willful and wanton nature of defendants' conduct, plaintiffs are entitled to exemplary and punitive damages in an amount to be proven at trial.

SECOND CLAIM FOR RELIEF
(Against All Defendants)
Securities Fraud in Violation of Section
10(b) of the Securities Exchange Act and Rule 10b-5

51.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of this complaint.

52.     In connection with the sale of a security to or the purchase of a security by plaintiffs, defendants violated Section 10(b) of the Securities Exchange Act and Rule 10b-5 by: (a) employing a device, scheme, or artifice to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated as a fraud or deceit upon plaintiffs, all as alleged in the preceding paragraphs of this complaint.

53.     The misrepresentations or omissions of material facts or scheme to defraud were furthered by use, means, or instrumentalities of interstate commerce and/or the mail by defendants.

54.     At the time of the misrepresentations and omissions, plaintiffs were ignorant of their falsity and believed them to be true.

55.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.

56.     The misrepresentations or omissions of material facts or scheme to defraud by defendants were made with the intent to deceive, manipulate, or defraud plaintiffs.

57. By virtue of the foregoing, defendants have violated Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder, and are liable to plaintiffs for so doing.

58. As a direct and proximate result of defendants' wrongful conduct, plaintiffs suffered damages in connection with their purchase of the security in an amount to be proven at trial, but which is reasonably expected to exceed $375,000 plus interest.

THIRD CLAIM FOR RELIEF
(Against All Defendants)
Securities Fraud in Violation of Utah Uniform
Securities Act, Utah Code Annotated § 61-1-1 *et seq.*

59. Plaintiffs reallege and incorporate by reference the preceding paragraphs of this complaint.

60. In connection with the sale of securities to or the purchase of securities by plaintiffs, defendants violated Utah Code Annotated § 61-1-1 by directly or indirectly: (a) employing a device, scheme, or artifice to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; and (c) engaging in acts, practices, and courses of business which operated as a fraud or deceit upon plaintiffs, all as alleged in the preceding paragraphs of this complaint.

61. At the time of defendants' misrepresentations, plaintiffs were ignorant of their falsity and reasonably believed them to be true.

62. At the time of defendants' omissions, plaintiffs did not know defendants omitted material facts necessary to make the statements made not misleading.

63. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.

64. Defendants made the misrepresentations and omitted to disclose the material facts set forth herein for the purpose of inducing plaintiffs to make the investment described herein.

65. By virtue of the foregoing, defendants recklessly and intentionally violated the Utah Uniform Securities Act, Utah Code Annotated § 61-1-1.

66. As a direct and proximate result of these violations of the Utah Uniform Securities Act by defendants, plaintiffs have been damaged and continue to be damaged in an amount to be proven at trial, but which is reasonably expected to exceed $375,000 plus interest and, pursuant to Utah Code Annotated § 61-1-22, is properly trebled, plus interest thereon, along with Plaintiffs' costs and attorneys' fees.

FOURTH CLAIM FOR RELIEF
(Against All Defendants)
Sales by Unlicensed Broker Dealers in Violation
of Utah Uniform Securities Act, Utah Code Annotated § 61-1-3

67. Plaintiffs reallege and incorporate by reference the preceding paragraphs of this complaint.

68. In connection with the sale of securities to or the purchase of securities by plaintiffs, defendants violated Utah Code Annotated § 61-1-3 by acting as a broker dealer or agent of a broker dealer without being licensed.

69. By virtue of the foregoing, defendants recklessly and intentionally violated the Utah Uniform Securities Act, Utah Code Annotated § 61-1-3.

70. As a direct and proximate result of these violations of the Utah Uniform Securities Act by defendants, plaintiffs have been damaged and continue to be damaged in an amount to be proven at trial, but which is reasonably expected to exceed $375,000 plus interest and, pursuant to Utah Code Annotated § 61-1-22, is properly trebled, plus interest thereon, along with costs and attorney fees.

### FIFTH CLAIM FOR RELIEF
(Against All Defendants)
Sales of Unregistered Securities in Violation of
Utah Uniform Securities Act, Utah Code Annotated § 61-1-7

71. Plaintiffs reallege and incorporate by reference the preceding paragraphs of this complaint.

72. In connection with the sale of securities to or the purchase of securities by plaintiffs, defendants violated Utah Code Annotated § 61-1-7 by selling securities which were not registered, exempt from registration, or the subject of notice filing under federal law.

73. By virtue of the foregoing, defendants recklessly and intentionally violated the Utah Uniform Securities Act, Utah Code Annotated § 61-1-7.

74. As a direct and proximate result of these violations of the Utah Uniform Securities Act by defendants, plaintiffs have been damaged and continue to be damaged in an amount to be proven at trial, but which is reasonably expected to exceed $375,000 plus interest and, pursuant to Utah Code Annotated § 61-1-22, is properly trebled, plus interest thereon, along with costs and attorney fees.

SIXTH CLAIM FOR RELIEF
(Against All Defendants)
Violation of Utah Code Annotated § 16-10a-842

75.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of this complaint.

76.     In connection with the sale of GreenFolders assets to First American, defendants Kirby, Frank, Ehlers, and Iorg violated Utah Code Annotated § 16-10a-842 by structuring the sale in such a way that the Pulleys received no benefit from the sale and the defendants received an unfair amount of the sale proceeds, and which was an unlawful distribution under Utah Code Annotated § 16-10a-640, and in violation of Utah Code Annotated § 16-10a-840.

77.     In connection with the sale of GreenFolders to First American, the defendants failed to discharge their duties in good faith, with the care an ordinarily prudent person would exercise under similar circumstances, and in a manner that was not in the best interests of GreenFolders and its shareholders. The defendants' conduct was in violation of their duty of loyalty, involved self-dealing, was gross negligence, was willful misconduct, and intentionally inflicted harm on the Plaintiffs.

78.     As a direct and proximate result of these violations, Plaintiffs have been damaged and continue to be damaged in an amount to be proven at trial, but not less than $375,000 plus interest, costs, and fees.

SEVENTH CLAIM FOR RELIEF
(Against All Defendants)
Violation of Utah Code Annotated § 16-10a-1408

79.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of this complaint.

80. In connection with the sale of GreenFolders assets to First American, defendants violated Utah Code Annotated § 16-10a-1408 by structuring the sale in such a way that the Pulleys received no benefit from the sale and the defendants received an unfair amount of the sale proceeds, and left GreenFolders without assets to pay the Pulleys for their damages alleged herein.

81. As a direct and proximate result of these violations of Utah Code Annotated § 16-10a-1408, Defendants are jointly and severally liable for all damages to Plaintiffs arising from the claims against GreenFolders as alleged herein up to the value of the assets of GreenFolders that were distributed to them.

EIGHTH CLAIM FOR RELIEF
(Against All Defendants)
Breach of Fiduciary Duty

82. Plaintiffs reallege and incorporate by reference the preceding paragraphs of this complaint.

83. Defendants owed fiduciary duties to the Pulleys, given the position of trust granted to them by the Pulleys, and as minority shareholders in GreenFolders. Among other things, the Pulleys entrusted defendants with a substantial portion of their retirement funds.

84. As a result, defendants had a duty of utmost care to appropriately protect the Pulleys' investment, and had a duty of loyalty to not engage in self-dealing, and to not engage in the wrongful conduct as alleged in this Complaint.

85. In breach of their fiduciary duties, defendants failed to protect the Pulleys' interests by, including but not limited to, misrepresenting material facts to the Pulleys, omitting to tell the Pulleys critical facts that would have allowed them to preserve and protect their

investment, failing to protect the Pulleys' interests in connection with the sale of GreenFolders to First American, structuring and agreeing to sell GreenFolders to First American in such a way that the Pulleys received no benefit from the sale and the defendants received an unfair amount of the sale proceeds, failing to give the Pulleys notice of dissenter's rights under Utah law that were created by the sale of GreenFolders' assets to First American, failing to exercise proper care in performing services for the benefit of the Pulleys, and by otherwise failing to appropriately maintain and protect the Pulleys' investment.

86. As a result of these breaches of fiduciary duties, the Pulleys have been damaged in amount to be proven at trial, but which is reasonably expected to exceed $375,000 plus interest.

87. Due to the willful and wanton misconduct of defendants, the Pulleys are entitled to exemplary and punitive damages in an amount to be proven at trial.

NINTH CLAIM FOR RELIEF
(Against All Defendants)
Negligence

88. Plaintiffs reallege and incorporate by reference the preceding paragraphs of this complaint.

89. Each of the defendants owed a duty of care to plaintiffs. Each of them had specific responsibilities regarding the investment of plaintiffs' funds, reporting of information, management of accounts, sale of assets, and otherwise protecting plaintiffs' funds.

90. The defendants breached their duties as set forth in this complaint.

91. As a result of defendants' breaches of duty, plaintiffs have been damaged in an amount to be proven at trial, but which is reasonably expected to exceed $375,000 plus interest.

92. Because defendants' conduct was willful and wanton, plaintiffs are also entitled to exemplary and punitive damages in an amount to be proven at trial.

### TENTH CLAIM FOR RELIEF
(Against All Defendants)
Negligent Misrepresentation

93. Plaintiffs reallege and incorporate by reference the preceding paragraphs of this complaint.

94. Defendants, in the course of their business, profession, or employment, and in a transaction in which they had a pecuniary interest, made false representations of presently existing material facts to plaintiffs including, but not limited to, the facts alleged in the preceding paragraphs of this complaint.

95. Defendants failed to exercise reasonable care or competence in obtaining or communicating the false representations.

96. Plaintiffs, acting reasonably and in ignorance of the falsity of the representations, relied upon the representations and were thereby induced to act.

97. As a result of defendants' false representations, plaintiffs have been damaged in an amount to be proven at trial, but which is reasonably expected to exceed $375,000 plus interest.

### ELEVENTH CLAIM FOR RELIEF
(Against All Defendants)
Conversion

98. Plaintiffs reallege and incorporate by reference the preceding paragraphs of this complaint.

99.     Defendants held plaintiffs' funds in trust. In violation of that trust, defendants converted plaintiffs' funds to their own benefit and self-enrichment.

100.    As a result of such conversion, plaintiffs have been damaged in amount to be proven at trial, but which is reasonably expected to exceed $375,000 plus interest.

TWELFTH CLAIM FOR RELIEF
(Against All Defendants)
Breach of Oral Contract

101.    Plaintiffs reallege and incorporate by reference the preceding paragraphs of this complaint.

102.    Defendants and plaintiffs entered into an oral agreement as described herein, wherein defendants promised the plaintiffs that if they invested their funds in GreenFolders their funds would be safe and secure and they could at least double their investment.

103.    Plaintiffs performed all the terms and conditions of the oral agreement required of them.

104.    Defendants have breached the terms of the oral agreement by failing to pay amounts owed under the oral agreement.

105.    Under the terms of the oral agreement, defendants owe to plaintiffs the principal sum of at least $750,000 plus interest.

106.    As a result of defendants' breach, plaintiffs have been damaged in an amount to be proven at trial, but which is reasonably expected to exceed $750,000 plus interest.

THIRTEENTH CLAIM FOR RELIEF
(Against All Defendants)
Unjust Enrichment/Quantum Meruit

107. Plaintiffs reallege and incorporate by reference the preceding paragraphs of this complaint.

108. Plaintiffs conferred a benefit upon defendants.

109. Defendants knew of and appreciated the benefit conferred upon them by plaintiffs.

110. Defendants accepted and retained the benefit under circumstances which make it inequitable for them to retain the benefit without payment of its value.

111. As a result of defendants' unjust enrichment, plaintiffs have been damaged in an amount to be proven at trial, but which is reasonably expected to exceed $375,000 plus interest.

FOURTEENTH CLAIM FOR RELIEF
(Against All Defendants)
Accounting

112. Plaintiffs reallege and incorporate by reference the preceding paragraphs of this complaint.

113. As an investor, plaintiffs are entitled to an accounting of what defendants did with plaintiffs' funds.

114. Consequently, plaintiffs seek an order compelling all defendants to provide a full accounting to plaintiffs as to GreenFolders and as to the disposition of plaintiffs' funds, including copies of all source documents relating to that accounting.

JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand judgment against defendants, jointly and severally, as follows:

1. Actual and consequential damages in an amount to be proven at trial, but in an amount not less than $375,000 plus interest, costs, and fees;

2. Damages pursuant to Utah Code Annotated § 61-1-22, which includes treble damages, interest, costs, and attorneys' fees;

3. Pre and post judgment interest, costs, attorneys' fees, and any other relief available to plaintiffs at law or in equity;

4. Punitive damages in an amount to be determined at trial; and

5. Such other relief as the court deems appropriate under the circumstances.

Dated this 10th day of February 2012.

CALLISTER NEBEKER & MCCULLOUGH

James D. Gilson
Marc L. Turman
Attorneys for Plaintiffs